FRANKLIN H. ARNOLD *et al.* *vs.* TOWN COUNCIL OF WARWICK.

JANUARY 3, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEETLAND, C. J.   This is a petition for a writ of mandamus to be directed to the respondents, whom it is alleged constitute the town council of Warwick, requiring them in open meeting to count the ballots for town and voting district officers in Warwick given in at the election held in said town on November 6, 1928,  to declare the result thereof and to direct the council clerk to make a record thereof.

It is alleged in the petition that each of the petitioners is a resident and duly qualified elector in Warwick, and that at said election each was a candidate for  the office of councilman upon both the Democratic and the so-called Citizens tickets.   The town of Warwick  is divided  into voting districts.

In sections 7 to 15, Chapter 10, General Laws 1923, are prescribed the duties of moderators, wardens and clerks of

town, ward and district meetings. Among other things in said sections contained it is provided that, after the voting is closed, the warden and clerk of a voting district, in a town divided into voting districts, in open meeting shall count the ballots, and the warden shall announce the result, and thereafter in open meeting the warden and clerk shall seal up, in the manner prescribed in said statute, the ballots given for town and voting district officers, and on questions submitted to the electors of such towns, in a separate package addressed to the town council of the town. It is further prescribed that the clerk of a voting district, within twelve hours after said sealing is done, shall deliver said package to the town clerk. It is also the duty of the warden and clerk to forward to the town council a certificate setting forth among other things in regard to the ballots enclosed in such package "the number of such ballots for each candidate and for what office."

Section 18, Chapter 10, General Laws 1923, among other things, provides that in towns divided into voting districts the town council shall be in session on the day following an election for town and voting district officers and shall in open meeting count the ballots given in at such election and declare the result thereof and the clerk of such council shall make a record thereof and the town clerk of the town shall forthwith after such declaration give certificates of their election to the persons declared elected.

At the hearing upon this petition it appeared in evidence, and the same was uncontradicted, that at the election held in said town on November 6, 1928, at the close of voting in district No. 4 the warden and clerk of said district did not, as by law required, count the ballots and declare the result; that the supervisors of election, apparently with the acquiescence and consent of the warden, attempted to count said ballots; but that by reason of controversies arising between the supervisors, and the confusion and disorder which prevailed at the meeting no count was made. Finally the election officers agreed that the ballots should

be sealed up and delivered to the town clerk, to be counted by the town council on the following day, and that the warden and clerk should forward to the town council a certificate of the result "of the count so far as it was made."

It also appeared in evidence and the same was uncontradicted, that the respondents, as the town council, met on the day following the election but did not examine or count the ballots sent up by the district wardens and clerks. They did not open any of the packages delivered to the town clerk by the several district clerks. Said packages are now in the possession of the town clerk with the seals unbroken. At said meeting respondents voted to accept as correct the result of the counts made in the several districts as that result had been certified by the wardens and clerks of those districts. That vote does not appear upon the records of the town council but it is therein recorded that the respondents did count the ballots given in at said election and declared as the result that the Republican candidates for town councilmen had been elected. The town clerk then gave certificates of election to the persons declared elected in said council record. Those persons thereupon organized as a town council and have since November 7, 1928, assumed to so act. That body was spoken of throughout the hearing of this petition as the "new town council" and for convenience it will be so referred to hereafter in this opinion.

The action of the town council was apparently taken upon a misapprehension as to the proper construction to be placed upon the statutory direction that the town council "shall in open meeting count the ballots." The addition by the town council of the figures appearing upon the certificates forwarded by the several district wardens and clerks, clearly did not constitute a counting of the ballots within the language and intent of the statute. This determination is strictly in accord with the recent opinion of this court upon similar facts in *Hall* v. *Town Council of North Providence*, 48 R. I. 8.

In reliance upon the fact that certificates of election have been given to other persons who are now assuming to act as a town council, these respondents urge that they are *functus officio*, without legal authority to convene as a town council and in open meeting count said ballots and declare the result. Section 19, Chapter 50, General Laws 1923, is as follows: "Sec. 19. All town officers shall hold their offices until the next election of town officers, and thereafter until their successors shall be lawfully, qualified to act; unless where it is expressly provided to the contrary." In accordance with the provisions of the statute these respondents have no successors legally qualified to act with regard to the matters involved in this petition. Under the statute the requirement of legal qualification is the possession of a certificate based upon a declaration of election, following a count by the town council of the ballots given in at an election by the qualified voters of the town. In *Murphy* v. *Moies*, 18 R. I. 100, the court held that "Officers *de facto* and *de jure* cannot be in possession of the same office at the same time. Possession by officers *de jure* excludes, on account of its paramount right, the consideration of any other claim." That these respondents constitute the town council *de jure* with sole authority to count the ballots cast for town and district officers at the election of November 6, 1928, is established by decisions of this court. *Hall* v. *Town Council of North Providence*, 48 R. I. 8. In *State* v. *Town of West Warwick*, 42 R. I. 13, the members of the town council in office at the time of the election for town officers held on November 5, 1918, were on November 27, 1918, by mandamus ordered to reconvene and complete the count of votes cast for one member of the town council at said election although it appeared that at the time of issuing the mandamus four of the five members of the succeeding town council had qualified and were legally authorized to function as a town council of the town with reference to all matters save that of counting the votes for town officers cast at the election of November 5, 1918.

The respondents further contend that the writ of mandamus should not issue by reason of the so-called laches of the petitioners arising from their delay in filing this petition. The same was filed on December 19, 1928. Hearing thereon was continued at the request of counsel for the respondents. The respondents further urge that the writ should not issue for the reason that no "demand" for a count of the votes has been made upon them by the petitioners. The respondents treat the position of the petitioners in this matter as if they were requesting that the respondents make a recount of votes already counted by them. The respondents held no meeting after November 7, 1928, the day after election, and no opportunity has been given the petitioners to request the respondents, as a body, to count the votes. It does appear, however, that the petitioners have indicated to the respondents individually the dissatisfaction of the petitioners that the votes have not been counted and have reminded the respondents of their legal duty in the premises. There was further evidence introduced at the hearing from which the petitioners claim that they were warranted in believing that the respondents were about to perform their duty and count the votes without litigation. When the failure of respondents still continued the petitioners filed this petition. A public officer in the situation of these respondents can not be permitted to evade the performance of a duty imposed by law solely on the ground that although the duty had been pointed out to him there had been delay in attempting to compel its performance. In support of their defence of laches the respondents point out that since its organization the so-called "new town council" has drawn jurors, appointed town officers, borrowed money to a considerable amount for the use of the town, and has assumed to exercise the other functions of a town council. It appears in evidence that at the first meeting after the organization of this "new town council" notice of the invalidity of their title to office was brought to the attention of its members by a representative of these petitioners.

These petitioners are before us in dual capacities, *i. e.*, as candidates for office at the last election, and also as qualified electors of Warwick. Whatever may be said of their delay as candidates for office, they have as citizens of Warwick brought to the attention of the court and are seeking a remedy for a very unfortunate situation existing in the town. If on the ground of the petitioners' laches we should deny the petition, we would not thereby establish the legal status of the members of the "new town council," of which only two were members of the town council in office on the day of election, November 6, 1928. There has now been a public disclosure of the nature of the title to office of the members of the "new town council." If that body continues to function, the validity of its acts will be open to question, and undoubtedly some will be the object of attack in the courts. Controversies will arise as to the standing of jurors drawn by it. Its ability to borrow money for the use of the town will be affected. Its power to spend the money appropriated for public purposes will be contested. The present situation should not be allowed to continue longer.

It appears that persons have dealt with the town through this "new town council." The rights of such persons in the premises may hereafter be questioned. The nature of their rights has not been before us specifically. Nothing herein contained should be regarded, or is intended, as a determination of such rights.

Section 5, Chapter 19, Gen. Laws 1923, so far as the same is essential here, provides that whenever any person upon whom is imposed any duty connected with counting the votes cast at any town, ward or district meeting, or declaring the result of such vote, shall fail, neglect or refuse to perform such duty within the time specified for the performance of the same "the supreme court shall forthwith, upon the petition of any citizen of the city or town wherein such failure, neglect or refusal occurred, issue its writ of mandamus ordering the person so failing, neglecting or refusing,

to perform the duties in question within twenty-four hours from the time of the issuance of said writ."

On January 7, 1929, at 1 o'clock p. m. a writ of mandamus directed to said respondents shall issue, ordering them to hold a session of the town council of Warwick on January 8, 1929, at 10 o'clock a. m. in the usual meeting place of said town council and then and there proceed to correct the record of the meeting of said town council held on November 7, 1928, with reference to the counting of votes cast by the electors of said town at the district meetings on November 6, 1928, in order that said record may conform to the facts, and then in open meeting to proceed with all reasonable expedition to count the ballots for all town and district officers given in by the electors of said town at the election held on November 6, 1928, and declare the result thereof, and to require the clerk of said town council to make a record thereof. If said town council is unable to complete said count upon January 8, 1929, it shall meet upon succeeding days until said count shall be completed and thereafter shall declare the result and require a record thereof to be made.

It will be the duty of the town clerk of said town, who was in office on November 7, 1928, after such declaration forthwith to give certificates of their election to the persons declared elected.

*Charles H. Page*, for petitioners.
*Peirce H. Brereton, Town Solicitor*, for respondents.